OPINION OF THE COURT
Evans V. Brewster, S.
The executors of decedent’s estate have petitioned the court to determine the validity and effect of an election made by testatrix’ surviving husband to take an elective share against the provisions of testatrix’ will.
Testatrix died on June 25, 1975, survived by her husband and two children, who are adults. Her will, dated March 13, 1972 was admitted to probate on July 31, 1975.
The dispositive portions of the will are not complicated. There are no preresiduary bequests. Paragraph first sets forth the usual directions to pay debts, funeral and administration expenses. Paragraph second then disposes of the entire residuary estate. Directions are given to divide the residuary into three equal parts. In subparagraph "A”, one part, from which an absolute bequest of $10,000 is made to the husband, is placed in trust with a direction to the trustee(s) "at least quarterly to pay or apply the net income therefrom for the use of my said husband during his life.” This trust is designated by testatrix as trust "H”. Upon the death of the husband the principal of trust "H” is bequeathed to her trustee(s) "to be equally divided between and as part of each and subject to the provisions of the two trusts hereinafter created in subparagraphs B and C of this [par.] second of this Will.” The trusts referred to in B and C are comprised of the remaining two parts of the residuary: one part given in trust for the benefit of testatrix’ daughter and designated as trust *217 "D”; with the last part given in trust for the benefit of testatrix’ son and designated as trust "S”. These trusts for the children provide for payment of principal at various ages until each beneficiary attains age 35 at which time each trust terminates and the balance of principal is payable to the respective beneficiary.
The balance of the will sets forth various powers given to the executors and trustees and directs payment from the residuary estate "of any death tax” with respect to property passing both under and outside the will.
The husband has filed a notice of election to take an elective share against the provisions of the will because he believes the trust created for his benefit does not comply with statutory requirements to bar the right of election of a surviving spouse (EPTL 5-1.1). The will, having been executed on March 13, 1972, is governed by the provisions of EPTL 5-1.1 (subd [c], par [1]).
The first argument advanced by the husband is that the terms of the will authorize the trustees to pay or apply to him less than substantially all of the net income from his trust in contravention of EPTL 5-1.1 (subd [c], par [1], cl [J]). The support for this argument stems chiefly from the provisions of the will which authorize the trustees: "[a] to withhold income in the event any beneficiary becomes adjudicated incompetent and to pay or apply the income to certain others on behalf of the incompetent beneficiary; [b] to keep uninvested any funds; [c] to hold all funds and parts thereof in solido and to invade the principal of any trust and to pay or apply for the beneficiary any part thereof and finally; [d] to act without the necessity of obtaining court approval in cases in which there may be a conflict of interest.” The husband believes all of these provisions are "potentially destructive” of the trust benefits he is entitled to receive by law. He has striven to show that the applicable statute (EPTL 5-1.1, subd [c], par [1], cl [J]) now limits the extent to which the courts may supervise trustees in the exercise of discretionary powers in order to protect the interests of a surviving spouse. It is his belief that as to testators dying after August 31, 1966, the Surrogates are deprived by this statute of the power they would otherwise have in the case of pre-1966 wills to give directions to the trustees in the exercise of their discretion for the protection of a surviving spouse.
However, it is not necessary for the court to pass upon the *218 claimed lack of supervisory power with respect to post-1966 wills. The court does not share the husband’s view that the powers in question are of such a discretionary nature that they become "potentially destructive” of the trust created for his benefit. It appears that the husband is reading into these powers discretion which in fact is not given to the trustees with respect to the husband’s trust. The husband has failed to cite any case to support his claim that these powers violate the statute.
Clearly the husband is neither an infant nor an incompetent. Therefore, any exercise of a power given to the trustees in this respect is at best academic under present circumstances. The power to keep funds uninvested is more imaginary than real. No one can seriously argue that by virtue of this power, the trustees would be exonerated in leaving unproductive the funds committed to their care. "It is axiomatic that fiduciaries, whether executors or trustees, are under a duty profitably to employ funds in their hands under penalty of personal liability for their neglect.” (3 Warren’s Heaton, Surrogates’ Courts [6th ed], § 264, subd 2, p 47-7.) Moreover any such power extensively employed could easily run afoul of EPTL 11-1.7 (subd [a], par [1]) which explicitly prohibits a testator from exonerating his fiduciaries from liability for failure to exercise reasonable care, diligence and prudence.
Again, with respect to the power to invade, the husband has misinterpreted the meaning of testatrix’ directions in this regard. This mistaken belief undoubtedly flows from a misconception of the basic nature of the disposition testatrix has made of her residuary estate. Testatrix created three separate trusts from three equal parts of the residue, each with a separate beneficiary having an undivided interest, rather than creating one trust with common beneficiaries. She went so far as to label each trust separately. Her reason for doing so is obvious, she sought to identify the trust of each person by the relationship that person bore to herself, i.e., "H” for husband, "D” for daughter and "S” for son. The fact that the trustees are authorized to administer the trusts in solido does not destroy the separate nature of each trust. Indeed, this power does no more than to give the trustees a power which they would otherwise have by statute (EPTL 11-1.1, subd [b], par [18]) absent a contrary provision in the will. Thus when testatrix authorized her trustees "to invade the principal of any trust and to pay or apply for the benefit of any beneficiary *219 any part thereof’ it becomes obvious that she intended to restrict the employment of this power solely to the trust of the person for whose benefit the invasion is sought. Any other construction is a distortion of the plain and ordinary meaning of testatrix’ words.
The last óf the powers granted to the fiduciaries which the husband finds "potentially destructive” is the attempt by the testatrix to permit her trustees to act without the necessity of obtaining court approval in instances in which there may be a conflict of interest. The husband’s arguments in support of this point are unconvincing. Any misuse of this power is easily safeguarded against by EPTL 11-1.7 (subd [a], par [1]) discussed above.
The last claim of invalidity of the husband’s trust rests upon the premise that the trust is insufficient because it has a capital value of less than his elective share due to the provisions of the tax clause in testatrix’ will. As noted above, this clause directs that all taxes, whether on property passing under the will or otherwise be paid out of the residuary estate. EPTL 5-1.1 (subd [c], par [1], cl [B]) provides that the elective share of a surviving spouse where there is more than one issue, as in the present case, is one third of the net estate computed after deduction of debts, administration and funeral expenses prior to deduction for estate taxes. The husband argues that having employed her own scheme of tax apportionment, rather than to have permitted the statutory plan provided under EPTL 2-1.8 to operate, the testatrix has effectively reduced his trust corpus to less than he would otherwise be entitled (citing Matter of Noble, 2 AD2d 897 and Matter of Weiss, 33 Misc 2d 773) thereby giving him a limited right of election under EPTL 5-1.1 (subd [c], par [1], cl [H]). Counsel for the executors have directed their response mainly to the point that the elective share trust need not qualify for the marital deduction to satisfy EPTL 5-1.1.
In order to determine the validity of this argument, it is necessary to view the implications flowing from the tax clause in two different respects. The first concern is the effect this clause has on the husband’s trust with respect to the taxes due on testamentary assets. The second concern is its effect with respect to taxes due on property passing outside the will, i.e., nontestamentary assets.
The effect on the testamentary assets will be considered first. EPTL 5-1.1 (subd [c], par [1], cl [B]) as above described *220 sets forth the method of computing the elective share in the case at bar, i.e., one third of the net estate computed after deduction of debts, administration and funeral expenses "but all estate taxes shall be disregarded.” The statute then goes on to state: "except that nothing contained herein relieves the surviving spouse from contributing to all such taxes the amounts apportioned against him under 2-1.8.” EPTL 2-1.8 (subd [c], par [1]) directs essentially (in the absence of an "otherwise” provision in the will) for apportionment of the tax among the beneficiaries in the proportion that the value of the property or interest received by each beneficiary bears to the total value of the property and interest received by all beneficiaries. Under the circumstances that in this estate there are no preresiduary gifts and that the residue is divided into three equal parts, it becomes obvious that testatrix’ own tax apportionment plan brings about a result no different from the result which would obtain under the statutory scheme with respect to the tax on testamentary assets. All of the tax is to be paid from the residuary. As only the residuary legatees share in the estate, each equal part of the residuary will bear an equal proportion of the tax. Thus, the argument made by the husband in this respect must be dismissed on the ground that it is academic.
The effect of the tax clause on the husband’s trust with respect to property passing outside the will must be determined. It would appear that this aspect of the tax clause could give rise to serious problems with respect to the sufficiency of the husband’s trust assuming substantial taxable assets passed outside the will to third parties. In such case, the husband’s trust could easily be depleted by virtue of the taxes assessed against the transfer of the nontestamentary property. However, no such depletion can take place here because the record before the court discloses that the only assets which passed outside of testatrix’ will are assets which were either held in joint names with the husband or given to him as a gift within three years of testatrix’ death, all of which assets qualified for the marital deduction. No tax therefore was assessed against the transfer of assets to the husband by operation of law. Again, the argument made by the husband in this respect must be dismissed on the ground that it is academic.
Accordingly,the court determines that (1) the elective share trust created by the testatrix under paragraph "A” of article second of her will complies with all statutory requirements *221 and (2) the purported election made by the husband is invalid and of no force and effect.